UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 21-CR-378 (TJK) |
| | : | |
| ARTHUR JACKMAN, et al., | : | |
| | : | |
| Defendants. | : | |

**GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO CONTINUE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes to the motions to continue filed by defendants Edward George, Jr., Paul Rae, and Kevin and Nate Tuck (ECF Nos. 184-186). The Court set the September 9 trial date in this case—which has been pending since 2021—nearly a year in advance, in October 2023. As the defendants' own motions make clear, rescheduling a five-defendant trial is no simple matter; all counsel are not available again until January 2025. Throughout the pendency of this case, the Court and the parties have taken appropriate steps to preserve the trial date, including regular status conferences and reports. The case is proceeding to trial according to this schedule.

In service of maintaining the trial date, the government has also recently notified the defendants that it plans to dismiss the Section 1512(c)(2) charges. This decision was made in order to avoid disruption to the trial schedule for a five-defendant case, and the dismissal eliminates the need for additional litigation as to the sufficiency of the Section 1512 charge as applied to these defendants. In light of this history, and after consideration of the public interest in completing the trial in this long-pending case, none of the defendants offers compelling reasons to justify further

delay, let alone a delay of many months. The Court should deny defendants' motions, and this case should proceed to trial on the long-set September 9 date.

## FACTS AND PROCEDURAL HISTORY

### I. The Defendants' Actions on January 6

The five defendants—Arthur Jackman, Paul Rae, Edward George, Jr., Nathan Tuck, and Kevin Tuck—joined together in carrying out their various crimes on January 6, 2021. All five defendants entered the Capitol building, with Jackman, George, and Kevin Tuck making it as far as the Senate Gallery.

Along the way to entering the building, Rae tore down a black metal fence to help the rioters advance to the Lower West Terrace, and Nathan Tuck and George were involved in a physical confrontation with police outside the Senate Carriage Door. Jackman and George also swiped an American flag. For their actions, all of the defendants are charged with multiple misdemeanor offenses. Defendants Rae, George, and Nate Tuck are also charged with felony offenses that include interference with federal officers in violation of 18 U.S.C. § 231(a)(3), assault in violation of 18 U.S.C. § 111(a) (George only), and destruction of federal property in violation of 18 U.S.C. § 1361 (Rae only).

### II. Procedural History

The first arrest in this case, of Rae, took place on March 24, 2021. Jackman was arrested less than a week later. ECF No. 5. The grand jury returned an initial indictment against Jackman and Rae on May 26, 2021. ECF No. 13.

Shortly thereafter, on July 27, 2021, the grand jury returned the First Superseding Indictment, which charged all five defendants. ECF No. 23. The superseding indictment included all but two of the charges that are currently pending:

- Count One, 18 U.S.C. § 1512(c)(2) (all defendants)
- Count Two, 18 U.S.C. § 1752(a)(1) (all defendants)
- Count Three, 18 U.S.C. § 1752(a)(2) (all defendants)
- Count Four, 40 U.S.C. § 5104(e)(2)(B) (entering or remaining in a gallery of Congress) (Jackman, George, Kevin Tuck)
- Count Five, 40 U.S.C. § 5104(e)(2)(D) (all defendants)
- Count Six, 40 U.S.C. § 5104(e)(2)(G) (all defendants)
- Count Seven, 18 U.S.C. § 231(a)(3) (George and Nathaniel Tuck)
- Count Eight, 18 U.S.C. § 111(a)(1) (George)
- Count Nine, 18 U.S.C. § 641 and 2 (Jackman and George)

A Second Superseding Indictment, with the same counts, was returned on December 1, 2021. ECF No. 72.

After several interim hearings, the Court held a status conference on October 19, 2023, and subsequently set a trial date of September 9, 2024–the first date on which all parties were available. That same day, the Court issued a detailed scheduling order setting various pretrial deadlines. ECF No. 150. All current counsel, except for George's counsel, participated in the October 19 hearing at which the trial date was set.

On February 16, 2024, George's current defense counsel, George Pallas, entered his appearance, and George's previous two attorneys moved to withdraw. ECF Nos. 158, 160. The Court initially denied the motion to withdraw, noting that "especially given that the Court has set a pretrial schedule and trial date, the Court has no basis to evaluate whether 'the attorney's withdrawal would unduly delay trial of the case or be unfairly prejudicial to any party, or otherwise not be in the interests of justice.'" Mar. 5, 2024 Minute Order (citing L. Cr. R. 44.5(d)). Only after Mr. Pallas expressly confirmed his availability for the September 9 trial date in a renewed motion did the Court permit the substitution. Mar. 8, 2024 Minute Order ("In light of the representations by new counsel that he is prepared to adhere to the pretrial schedule and trial date previously set in this case, he Court finds that counsel's withdrawal would not unduly delay trial of the case, or be unfairly prejudicial to any party, or otherwise not be in the interest of justice") (citation omitted).

3

On May 3, 2024, the parties filed a joint status report representing that they were all "on track to begin jury trial on September 9, 2024." ECF No. 179.

The grand jury then returned a third superseding indictment on May 29, 2024, which added two counts against Rae only. ECF No. 181. The counts—one violation of 18 U.S.C. § 231(a)(3) and one violation of 18 U.S.C. § 1361—arise from Rae's role destroying the black metal fence lining the Lower West Terrace. ECF No. 181. The video exhibits introduced in support of the new charges (two lasting 40 seconds and one lasting 10) had all been previously produced in discovery, including CCTV footage of Rae's conduct and open source videos taken in the immediate vicinity of the fence. The Third Superseding Indictment also added a time and place to Count Seven (a civil disorder charge against Nathaniel Tuck and George) ("near the Senate Carriage Doors at approximately 2:16 p.m." and the name of the officer victim to Count Eight (the assault charge pending against George).

The same day that the Third Superseding Indictment was returned, the government emailed a copy to all defense counsel. The government's email also described the changes to the indictment and provided all of the exhibits presented to support the new indictment. Defense counsel did not ask questions, seek a continuance, or otherwise respond at the time.

### III.   Joint Representation of the Tucks

As this case progressed, the Court also addressed a potential joint representation conflict issue: the Tucks and Rae were originally all represented by the same attorney (who is no longer involved in the case). The Court appointed a conflicts attorney to explore the joint representation in January 2022. Jan. 21, 2022 Minute Order. On May 5, 2022, William Shipley, the Tucks' current attorney, entered his appearance on behalf of the Tucks. ECF No. 89-90.[1] After reviewing a report

---

[1] Rae also later changed counsel. ECF No. 118; ECF No. 139.

4

and recommendation from conflicts counsel, the Court then appointed each defendant an independent conflicts counsel. July 19, 2022 Minute Order. In October, 2022, the Court held conducted under-seal colloquies with the Tucks individually to consider whether Mr. Shipley could represent both. ECF No. 137 at 2.

On July 17, 2023, the Court issued an order finding that Mr. Shipley could permissibly represent both Tuck defendants consistent with the D.C. Rules of Professional Conduct and the Sixth Amendment. ECF No. 137. The Court's order noted, among other facts, that both defendants had consented to the joint representation despite the possibility of future conflicts, that the possibility of future conflicts was "unlikely," and that, "even if a conflict arises, the Court's colloquies satisfy it that the conflict would not so adversely affect counsel's performance as to raise constitutional concerns." *Id.* at 3 (citation omitted).

### IV.     *Fischer* and Count One (the Section 1512(c)(2) Charge)

On June 28, 2024, the Supreme Court issued its opinion in *Fischer v. United States*, which addressed the scope of the conduct covered by 18 U.S.C. § 1512(c)(2), with which all defendants are charged in Count 1. 144 S. Ct. 2176 (2024). *Fischer* held that Section 1512(c) does not cover "all means of obstructing, influencing, or impeding any official proceeding." *Id.* at 2185. However, the Court did not reject the application of § 1512(c)(2) to January 6 prosecutions. Rather, the Court explained that the government must establish that the defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or other things used in the proceeding or attempted to do so. *Id.* at 2185-86, 2190. The Supreme Court remanded the case to the D.C. Circuit for further proceedings. *Id.* On July 2, the Court issued a Minute Order directing the government to address by July 15 whether it planned to proceed with Count One.

## V. The Motions to Continue

On June 26, 2024, George and Rae filed separate motions to continue the trial. ECF Nos. 184-185. The next day, the Tucks moved to continue as well. ECF No. 186. Each motion raises distinct arguments.

George's motion is based his counsel's (Mr. Pallas's) family travel conflict. According to the motion, Mr. Pallas's daughter, a student at the University of Pennsylvania, is spending a semester abroad at King's College London beginning September 16, and lasting until December 13. ECF No. 184 at 1. Mr. Pallas's daughter and wife expect Mr. Pallas to be present in London to help his daughter move into her apartment. *Id.* at 2. Mr. Pallas represents that he is not available until October 14, and that all defense counsel are not available until January 2025. *Id.* at 4.[2]

Rae's motion to continue is based on the two additional counts brought against him in the May 29 Third Superseding Indictment. ECF No. 185 at 2. Rae asserts that he needs to file an additional dispositive motion related to the civil disorder charge and to develop his strategy in light of the "nebulous nature of a civil disorder allegation combined with the unprecedented volume of discovery." *Id.* Rae asks the Court to vacate the trial date and set a status date instead. *Id.* at 3. Rae also cites potential uncertainty in light of the then-pending *Fischer* decision. *Id.*

The Tucks' June 27 motion for a continuance joined George's and Rae's motions. ECF No. 186 at 1. The Tucks' counsel represents that he is "currently in discussions with the jointly represented defendants Kevin and Nathan Tuck the potential need for a second attorney to be brought into the case as separate counsel for one or the other," and that more time would help a new attorney prepare for trial. *Id.* Counsel also represents that, should trial be rescheduled, he is not available before mid-January 2025. *Id.*

---

[2] The government is not available the week of October 14.

6

In response to *Fischer,* the Tucks then filed a motion to dismiss on July 1, which also sought a continuance "to afford all parties an opportunity to further evaluate the impact of *Fischer* on the prosecution/defense of this case." ECF No. 187 at 4.

The remaining defendant, Jackman, has not moved to continue the trial.[3]

On July 9, 2024, the government informed defendants that, in light of its interest in maintaining the September 9 trial date, it intended to dismiss the Section 1512(c)(2) charge. It also issued plea offers to each defendant to other pending charges.

## ARGUMENT

The Court should maintain the September 9 trial date. Bringing this five-defendant case to trial has required considerable effort by the government, the parties, and the Court. None of the defendants' motions offers compelling reasons to justify setting aside the carefully orchestrated trial date and the public interest in a speedy trial—especially since the delay they propose would be a lengthy one.

"It is firmly established that the granting or refusal of a continuance is a matter within the discretion of the judge who hears the application, and is not subject to review absent a clear abuse." *United States v. Burton*, 584 F.2d 485, 489 (D.C. Cir. 1978). The Circuit has recognized that both the trial court and the government "generally ha[ve] a substantial interest in avoiding disruptions of a court's calendar and in having guilt or innocence promptly adjudicated." *United States v. Haldeman*, 559 F. 2d 31, 83 (D.C. Cir. 1976); *United States v. Gordon*, 77 F. Supp. 3d 95, 100 (D.D.C. 2015) ("The public has a strong interest in efficient and effective resolution of cases.").

---

[3] George's motion represents that Jackman does not object to George's request to continue. ECF No. 184 at 2.

7

The need for "efficient and effective resolution" of this case supports maintaining the current trial date. This case was initially charged in 2021. It is now July 2024. Because of the difficulty of coordinating five defendants' schedules, the Court set a trial date nearly a year in advance, in October 2023. The Court issued a scheduling order that same day, setting deadlines to ensure the parties remained on track to stick to that date.

Even before setting a trial date, moreover, the Court spent months resolving the potential joint representation conflict issue, appointing several conflicts counsel, reviewing a report and recommendation, and conducting a hearing before issuing a carefully considered decision one year ago finding that the joint representation could proceed.

Once that trial date had been set, the Court took steps to guard that date, denying a substitution of counsel absent a representation that the substitution would not unduly delay the trial. And the government no longer plans to proceed on the Section 1512(c)(2) charge in the September trial, narrowing the issues, limiting the defendants' potential exposure, and simplifying pretrial preparations. Government witnesses have also set aside the current trial date in their schedule, and the Court has blocked off the time on its calendar for a multi-defendant jury trial.

Now, after representing that they are prepared to try this case in September, including in a May status report filed with the Court, Rae, and George, and the Tucks waited until late June before abruptly moving in unison to continue the long-set trial date. Their reasons fail to justify continuing the trial further, particularly because all defense counsel are not available until January 2025.

I.   **The Impact of *Fischer***

The Tucks and Rae cite uncertainty regarding the Section 1512(c)(2) charge under *Fischer* as a reason to continue the trial. The government has mooted this issue by agreeing to dismiss the

8

Section 1512(c)(2) charge in order to keep the case on track for the September 9 date. By dismissing the charge, the government obviates the need for additional litigation regarding the scope of Section 1512(c)(2) or the sufficiency of the indictment. Moreover, after *Fischer,* the government issued plea offers to other charges, which will shortly expire. It does not anticipate the need to continue the trial to facilitate a potential resolution.

## II. George's Motion

The government is sympathetic to George's counsel's wish to travel with this wife and college-age daughter to London and help her set up the apartment in London where she will live for the next three months. But George's counsel joined this case based on the express representation that he could abide by the current trial date. This conflict simply does not rise to the level that justifies displacing a five-defendant felony federal criminal trial.[4]

George's counsel represents that he is unavailable from a week before the trial until mid-October. And the Tucks' counsel is not available then; as George acknowledges, the next date all are available is mid-October—so moving the trial to allow him to spend the week situating his daughter in London would result in a long delay. This trial should not wait until January 2025, nearly four years after charges were first brought, and when the parties have long been on notice of the September date and have filed motions and been on pace to begin trial as scheduled.

## III. Rae's Motion

Rae's arguments also do not merit a continuance. Rae's main argument is that the case had been pending for many months before the government brought the newest charges against him, and that he needs more time to address those charges, particularly the charge under Section 231. The new charges against Rae concern a single act (pushing over and stepping on the black metal

---

[4] George's counsel, of course, could travel to London after the trial to assist as needed.

9

fence on the Lower West Terrace at about 12:55 p.m.) that is captured on video. The government brought the new charges over three months before trial and specifically pointed defense counsel to the evidence supporting those charges that same day. The disclosure was specific: three video clips (one 10-second clip and two 40-second clips), two screenshots, one two-page document, and ten transcript pages. Three-plus months is more than sufficient for Rae's counsel to get up to speed on the conduct and all surrounding circumstances. Notably, when the government disclosed the new charges and pointed out the evidence, Rae asked no questions. He did not seek more time to file motions then. Instead, he waited nearly a month before raising the issue at the same time that other counsel asked for delays. It is unclear why he did not seek leave to file any new motions earlier.

Moreover, the civil disorder charge does not introduce legal complexity into the case. Two defendants are already facing the charge, and George has already filed a motion raising various legal challenges to it. This Court, and many other courts in this district, has already addressed legal challenges to this charge in the January 6 context. *See, e.g., United States v. Nordean,* 579 F. Supp. 3d 28 (D.D.C. 2021). The government would not oppose permitting Rae to file a dispositive motion relating to this charge now, to preserve the record, but the current trial schedule can fully accommodate that briefing. And Rae does not even specify what this "dispositive" motion would be, nor does propose a new date; rather, he requests a status to set a briefing schedule, followed by a trial date. Given other counsel's representations about their schedule, the practical effect of his request would also be to delay trial by many months—to allow the filing of unspecified motions that can be filed now.

As noted above, Rae also argues that uncertainty of the obstruction charge supports a continuance. Again, by not proceeding on the 1512 charge, the government moots the issue and narrows the trial.

### IV.     The Tucks' Motion

The Tucks seek more time because they may now wish to end their joint representation and bring a new attorney into the case to represent one of them. The time for that substitution has long passed. The Court engaged in an extensive process to confirm the viability of the joint representation—including the Tucks' consent to it—over many months. It found, over a year ago, that the joint representation could continue and did not raise constitutional or ethical concerns. To the government's knowledge, there are no new facts that have emerged to change that landscape.

Moreover, citing the Local Rules, this Court did not permit a different defendant, George, to substitute counsel absent confirmation that new counsel could abide by the trial date. That ruling should apply equally to any substitution by the Tucks here. The right to counsel "'cannot be insisted upon in a manner that will obstruct an orderly procedure in courts of justice, and deprive such courts of the exercise of their inherent powers to control the same.' The public has a strong interest in the prompt, effective, and efficient administration of justice; the public's interest in the dispensation of justice that is not unreasonably delayed has great force." *Burton*, 584 F.2d at 486 (*quoting Lee v. United States*, 235 F.2d. 219 221 (D.C. Cir. 1956)). That is what the Tucks' hypothetical substitution would do here: upend a long-set trial date in a five-defendant trial.

When a defendant seeks a continuance for new counsel, a defendant's right to counsel "must be carefully balanced against the public's interest in the orderly administration of justice." *Burton*, 584 F.2d at 489. When considering a motion for a continuance based on new counsel, a trial court should weigh the following factors:

11

> [T]he length of the requested delay; whether other continuances have been requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; whether the defendant has other competent counsel prepared to try the case, including the consideration of whether the other counsel was retained as lead or associate counsel; whether denying the continuance will result in identifiable prejudice to defendant's case, and if so, whether this prejudice is of a material or substantial nature; [and] the complexity of the case.

*U.S. v. Eiland*, 738 F.3d 338, 355 (D.C. Cir. 2013) (quoting *Burton*, 584 F.2d at 490-491). Here, the balance of factors weigh against continuing the trial, should the Tucks now wish to change course and procure separate representation, over a year after the Court confirmed that their joint representation could proceed. Given Mr. Shipley's schedule, the continuance request is for at least four months; the continuance would affect four other defendants, their counsel, the government, and the Court; and the requested delay is dilatory, given that the Court spent over a year addressing the issue and issued a decision over a year ago, and only now are the Tucks apparently questioning how they wish to proceed. As part of that work, the Court determined that Mr. Shipley could represent both defendants; thus, neither defendant would be deprived of competent counsel to try the case, and will not be prejudiced by denying the continuance. The Tucks also "contributed to the circumstance" giving rise to the circumstance by apparently exploring anew whether they wish to be jointly represented. Meanwhile, the Tucks have provided no reason justifying the late potential substitution.

In such circumstances, the D.C. Circuit has affirmed the denial of a late motion to replace counsel and continue the trial. *See United States v. Poston*, 902 F.2d 90, 97 (D.C. Cir. 1990). Courts in this district have done the same. *See, e.g.*, *United States v. DeGregoris,* 23-cr-57 (RC), Mar. 22, 2024 Minute Order (denying request to continue trial based on substitution of counsel 3.5 months before trial); *United States v. Rhodes,* 22-cr-15 (APM), Sept. 7, 2022 Minute Order (same;

12

one month before trial). "Although the Sixth Amendment guarantees that a defendant must be afforded a reasonable opportunity to secure counsel of his own choosing, the right to retain counsel of one's choice is not boundless, and must be balanced against the judicial system's interest in expeditious proceedings." *United States v. Shepherd*, 102 F.3d 558, 564 (D.C. Cir. 1996) (citation omitted). Here, over the course of over a year that the Court and parties spent assessing the joint representation, there can be no question that the defendants were afforded reasonable opportunity to secure counsel of choice. The Tucks do not explain why they would reconsider their thoroughly vetted preferences now. The interest in the orderly administration of justice and a speedy trial support not delaying this carefully set five-defendant trial by several more months based on a hypothetical and belated change of heart.

## **CONCLUSION**

This trial has literally been years in the making. The defendants' own motions reveal the difficulties in managing a multi-defendant case that will always be present, including counsel's family circumstances, counsel's trial schedules, and the possibility that a defendant will have a change of heart about representation. None of these issues is unforeseeable or unsurmountable; instead, they are obstacles of the sort that counsel routinely deal with through advance planning of the sort this Court sought to facilitate by setting the trial date almost a year in advance. The defendants do not provide sufficient justification to set aside the careful scheduling efforts this Court has undertaken to manage this litigation and bring it to the resolution that the public's interest in a speedy trial demands. The Court should deny defendants' motions.

                    Respectfully submitted,

                    MATTHEW M. GRAVES
                    UNITED STATES ATTORNEY
                    DC BAR NO. 481052

By:    /s/ *Alexis J. Loeb*
        JASON B.A. MCCULLOUGH
        DC Bar No. 998006; NY Bar No. 4544953
        ALEXIS J. LOEB
        CA Bar No. 269895
        MONIKA (ISIA) JASIEWICZ
        DC Bar No. 1024941
        Assistant United States Attorneys
        601 D Street NW
        Washington, DC 20530
        (202) 252-7233
        jason.mccullough2@usdoj.gov