UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America : | |
| v. : | Case No. 1:21-cr-00378-002 |
| Paul Rae, : | Hon. Judge Timothy J. Kelly |
| *Defendant* : | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**
**AND ASSESSMENT OF 18 U.S.C. § 3553(a) SENTENCING FACTORS**

COMES NOW, Paul Rae, by and through counsel, and provides this Court with his position regarding the application of the sentencing factors to the Court's obligation to impose a sentence "sufficient, but not greater than necessary" to comply with the factors found in 18 U.S.C. § 3553(a).

Mr. Rae respectfully requests a sentence including a period of probation combined with home confinement including electronic monitoring, and other terms as recommended by probation. Mr. Rae is intimately aware of the seriousness of his conduct on January 6, 2021, and that of the larger collective, some of whom gathered in violent protest that day. He has taken, and continues to take, full responsibility for his actions, including by pleading guilty and showing remorse. He will likewise address the Court at sentencing, taking responsibility for his actions. He is asking for this sentence in light of the sentencing guidelines, the statutory principles of sentencing, avoiding unwanted sentencing disparity, and a particularized consideration of Mr. Rae's case and circumstances.

**Background**

On, May 26, 2021, a grand jury indicted Mr. Rae with violations of 18 U.S.C. §§ 1512(c)(2) and (2), 18 U.S.C. § 1752(a)(1), 18 U.S.C. § 1752(a)(2), 40 U.S.C. § 5104(e)(2)(B),

40 U.S.C. § 5104(e)(2)(D), and 40 U.S.C. § 5104(e)(2)(G). On July 7, 2021, a grand jury returned a superseding indictment charging Paul Rae with violations of 18 U.S.C. §§ 1512(c)(2) and (2), 18 USC § 1752(a)(1), 18 USC § 1752(a)(2), 40 USC § 5104(e)(2)(D), and 40 USC § 5104(e)(2)(G). On December 1, 2021, a grand jury returned a second superseding indictment charging Mr. Rae with the same violations.

On May 29, 2024, a grand jury returned a third superseding indictment charging Mr. Rae with Obstruction of an Official Proceeding and Aiding and Abetting, violations of 18 U.S.C. §§ 1512(c)(2) and (2) (Count 1); Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count 2); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count 3); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count 5); Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count 6); Destruction of Government Property, in violation of 18 U.S.C. §§ 1361 and 2 (Count 10); and Civil Disorder, in violation of 18 USC § 231(a)(3) (Count 11). Mr. Rae was arrested on March 24, 2021, in the Middle District of Florida and was released on bond the same day. Since then, he has remained on bond.

On August 28, 2024, Mr. Rae pleaded guilty to Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) and Civil Disorder, in violation of 18 USC § 231(a)(3).  Mr. Rae and the Government agree that the total offense level for these offenses is 10, that his criminal history category is I, and that his Sentencing Guidelines range is 6 to 12 months.

**Argument**

A. **The Court shall impose a sentence sufficient, but not greater than necessary, to comply with 18 U.S.C. § 3553(a).**

"The court shall impose a sentence sufficient, but not greater than necessary, to comply with" 18 U.S.C. § 3553(a)'s mandates. These include considering the "nature and circumstances of the offense and the history and characteristics of the defendant," reflecting the seriousness of the offense, affording adequate deterrence, protecting the public, and providing necessary rehabilitation to the defendant. 18 U.S.C. § 3553(a)(1-2).

In *United States v. Booker*, 125 U.S. 738 (2005), the United States Supreme Court restored the sentencing judges the power to use discretion in determining appropriate sentences. "In the wake of *Booker*, therefore, the discretion of a sentencing court is no longer bound by the range prescribed by the sentencing guidelines. Nevertheless, a sentencing court is still required to 'consult [the] guidelines and take them into account when sentencing.'" *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005) (quoting *Booker*, 125 U.S. at 767). In light of *Booker*, "a district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider the range as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a) before imposing the sentence." *Id*. (citation omitted).

B. **18 U.S.C. 3553(a) Factors to Consider in Sentencing.**

   a. **Nature and Circumstances of the Offense**

Mr. Rae pled guilty to Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1), and Civil Disorder, in violation of 18 U.S.C. § 231(a)(3). The Court accepted his guilty plea and statement of the offense. As discussed above, Mr. Rae's relevant conduct includes traveling to Washington, D.C., for protests scheduled for January 6,

3

2021, protesting at the Capitol, walking past signs that stated, "AREA CLOSED By order of the United States Capitol Police Board," shaking a fence panel, entering the West Plaza, and continuing into areas he was not allowed to be in.

Mr. Rae did not engage in violence against law enforcement officers, he did not assault law enforcement officers, he did not break into or deface the Capitol Building, he did not raid the offices of Members of Congress, he did not enter the Senate or House Chambers, and he did not use weapons. Although Mr. Rae was not allowed in the areas he was in that day, he did not engage in violence.

The majority of the aggravating factors to which the Government attributes to Mr. Rae are words and actions from his peers—both in text messages and on January 6, 2021. Notably, there is no evidence that Mr. Rae saw or replied to many of the more incendiary statements, or evidence to suggest whether Mr. Rae took them seriously. Nonetheless, it is largely for the words and actions of others that the Governments seeks an upward variance from the guidelines. ECF No. 233, Government Sentencing Memo at 3. While neither excusable nor benign, the true nature and characteristics of Mr. Rae's offenses are more limited.

    **b.**    **History and Characteristics of the Defendant**

Mr. Rae is a 42-year-old father to his sons, Giovanni (age 19) and Ian (age 5), husband to Jenna Rae, brother to Christopher and Nicholas, and son of Donald and Ann Rae. Mr. Rae grew up in a large, middle-class Catholic Italian family and is close with both his immediate and extended family. He is dedicated to his children and wife and understands the effects of his actions on both him and his family, particularly as he is the primary household income earner.

Mr. Rae has worked in the aviation industry for much of his adult life, earning his commercial pilot's license and attending college. He has also worked as an Operations Manager

at King Laboratories since 2012, and his employer has remained supportive of Mr. Rae throughout his case. He has a very minor record, stemming from immaturity as a teenager and two driving offenses. Mr. Rae does not have a violent record, and there is no indication that his conduct from January 6 is normal for him. Instead, he realizes that his actions have adversely impacted him and his family, as they have lived under the cloud and threat of this criminal prosecutor for the last three years.

The consequences of this conviction and any sentence the Court awards will follow Mr. Rae for the remainder of his life. He will likely lose his commercial pilots license, he will be barred from many employment opportunities, and he will struggle to fully care for this family. His character and history are further reflected in the attached letters from his friends and family. Exhibit A. His wife provides a window into his life:

> Paul is always there for me as a husband and father. He will bring Ian to work with him if we are without childcare just so I don't have to call out of work. He is there to pick Ian from his karate classes everyday and start dinner so Ian doesn't have to wait until I get home. Although I hold a steady job, Paul is our family's provider. Not only with his income, but with his presence in our day to day lives. He provides for me, Ian, and our oldest son Gio, who currently attends college. Without Paul's income and steady career we would find it difficult to continue paying for Gio's tuition.

Mr. Rae knows that he has put this at risk through his actions and the group he was around on January 6. He is deterred from future criminal conduct.

### c. The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense

The nature and circumstances of the offense and Mr. Rae's own personal characteristics must be balanced with imposing a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. Mr. Rae understands the seriousness of his actions and, indeed, the entirety of what occurred on January 6, 2021.

Mr. Rae takes full responsibility for his actions and his role. He has spent every day since January 6 reliving that day, and he faces the constant reminder of his wrongdoing. Likewise, he suffers from the seriousness of his offense every day, whether with having to face family and friends, the indelible shame this has brought upon himself and his family, or the uncertainty of losing everything he has worked for. Every future job application will require the disclosure of his crime, and he will forever live with the ignominy of his actions and decisions that day.

While serious, Mr. Rae's actions must be viewed in context when considering sentencing. Unlike others, Mr. Rae did not engage in physical violence, he did not assault law enforcement officers, he did not take looted-trophies from the day, he did not come clad in armor prepared for violence, and he did not bring weapons with him. As this Court is well aware, the culpability of one cannot be ascribed to all who participated in the events of January 6. There were many groups of people, with many different motives and many different levels of culpability, who should all be evaluated for their own actions.

      d.      **To Afford Adequate Deterrence to Criminal Conduct**

Mr. Rae has been adequately deterred and is not likely to engage in future criminal conduct. He comes before this court with a relatively minor criminal record, free of any felony convictions. Having a felony on his records from this offense serves as a greater punishment and deterrence to him than it may for someone with an extensive record. He will live with its consequences daily, both professionally and personally. Because of these charges and his potential incarceration, his life has been put on hold for years.

These collateral consequences are more than enough to deter Mr. Rae from criminal conduct, especially conduct similar to that of January 6. Nevertheless, a prison sentence as the Government requests only goes so far in addressing the principles of sentencing. The National

Institute of Justice by Department of Justice issued a summary on research on deterrence. It states that increasing the severity of punishment does little to deter crime. U.S. Dep't of Justice, Office of Justice Programs, Nat'l Inst. Of Justice, *Five Things to Know About Deterrence* (July 2014) (relying on Daniel S. Nagin, Deterrence in the Twenty-First Century, 42 Crime & Justice in America 199 (2013)).[1] While punishment has a deterrent effect, research shows that "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, Purposes and Functions of Sentencing, 34 Crime & Just. 1, 28 (2006)." *Id*. Here, Mr. Rae stands punished, both legally and practically, from the last years waiting for his outcome.

C.     **The Sentencing Guidelines**

    a.     **Mr. Rae's Total Offense Level is 10**

Mr. Rae and the Government agree that the total offense level for Mr. Rae's conduct is 10. The base offense level for Count 1 is 4, pursuant to U.S.S.G. § 2B2.3. A 2-level increase applies, pursuant to U.S.S.G. § 2B2.3(b)(1)(A)(vii), since the offense occurred on a restricted building or grounds. This results in an adjusted offense level of 6 for Count 2. The base offense level for Count 11 is 10, pursuant to U.S.S.G. § 2A2.4. Because the two counts do not group, each count is assigned a unit, and the 2 units result in an increase of 2 levels. The government agreed to a 2-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1. Therefore, the total offense level is 10.

    b.     **Mr. Rae's Criminal History Category is I**

Mr. Rae and the Government agree that Mr. Rae's criminal history category is I because he has 0 criminal history points. A total offense level of 10 and a criminal history category of I yield an advisory guidelines range of 6 to 12 months.

---

[1] https://nij.ojp.gov/library/publications/five-things-about-deterrence

D. **Avoiding Unwarranted Sentencing Disparities**

The following is a chart of convictions under 18 U.S.C. 231(a)(3) – some of which also include 18 U.S.C. 1752(a)(1) as well. Many of the defendants outlined below have conduct similar to Mr. Rae, and many more have conduct that is far worse. Because Mr. Rae's involvement in the day as a whole is less than that of many other defendants, a similar or lower sentence is appropriate.

| Name | Charge(s) | Facts | Sentence |
|---|---|---|---|
| *US v. Joseph Pavlik*, 1:23-cr-00045-TNM | 231(a)(3), 1752(a)(1) | Pavlik drove from Chicago to stay with members of the B Squad (a part of the militia-style group, Guardians of Freedom) and brought a gas mask, tactical vest, riot helmet, goggles, and chemical spray to the Capitol. He joined rioters in pushing against the police line in the Tunnel. After being expelled by police, he remained at the Tunnel entrance and took out his can of pepper spray, but was jostled by the crowd before he could use it. Later, he passed a can of pepper spray to the mouth of the Tunnel where a rioter used it against police. On social media, he wrote, "We need an insurrection." | 60 days (Government requested 13 months) |
| *US v. Aaron Mostofsky*, 1:21-cr-00138-JEB | 231(a)(3), 1752(a)(1), 641 | Mostofsky came dressed as a caveman and carried a rod while he joined the crowd that overwhelmed a police perimeter near Peace Circle. Later, he joined a group that pushed against a police line and used his body to break the line. On his way into the Capitol, he | 8 months (Government requested 15 months) |

8

| | | | |
|---|---|---|---|
| | | grabbed a US Capitol Police riot bullet proof vest and wore it. He was part of the first dozen rioters to enter through the broken Senate Wing Door. Once inside, he grabbed a police riot shield and pursued an officer upstairs and into a corridor right outside the Senate Chamber. He left the building with the shield. | |
| *US v. Daniel Johnson*, 1:21-cr-00407-DLF | 231(a)(3) | Johnson and his father climbed through a broken window and entered the Capitol where they remained for 26 minutes. He and his father rushed the line of officers inside and helped push open the doors, allowing other rioters to flood in. | 4 months (Government requested 6 months) |
| *US v. Daryl Johnson*, 1:21-cr-00407-DLF | 231(a)(3) | Johnson and his son climbed through a broken window and entered the Capitol where they remained for 26 minutes. He and his son rushed the line of officers inside and helped push open the doors, allowing other rioters to flood in. Johnson posted on social media that when the people who stormed the Capitol "decide to throw out the 'elected officials' […] It will be hangings on the front lawn of the capitol." | 30 days (Government requested 3 months) |
| *US v. Nolan Cooke* | 231(a)(3) | Cooke joined the front lines and helped lead the charge breaking through a police line. He recorded it by wearing a camera round his neck. Later, Cooke climbed the steps of the Capitol and | 366 days (Government requested 11 months) |

9

| | | | |
|---|---|---|---|
| | | made physical contact with officers at the entrance while he tried to push through the crowd. He encouraged others to break the glass of the windows at the entrance. | |
| *US v. Cory Konold*, 1:21-cr-00160-TJK | 231(a)(3) | Konold and his sister traveled from Arizona and joined with the Kansas City Proud Boys to the National Mall where they joined a larger group of Proud Boys from around the country. They, along with the group, breached a police line and were some of the first rioters to trample over toppled barricades. They, and a Proud Boy, used their bodies to push against another police line and eventually made their way into the Capitol. Inside, Konold took possession of a police helmet and took it home. | 30 days (Government requested 3 months) |
| *US v. Felicia Konold*, 1:21-cr-00160-TJK | 231(a)(3) | Konold and her brother traveled from Arizona and joined with the Kansas City Proud Boys to the National Mall where they joined a larger group of Proud Boys from around the country. They, along with the group, breached a police line and were some of the first rioters to trample over toppled barricades. They, and a Proud Boy, used their bodies to push against another police line and eventually made their way into the Capitol. After, she posted on social media bragging about her actions. | 45 days (Government requested 6 months) |

10

| | | | |
|---|---|---|---|
| *US v. Tyng Yang*, 1:23-cr-00100-JDB | 231(a)(3) | Yang traveled from Illinois to attend the Stop the Steal rally. He entered the Capitol and once inside, walked around the Rotunda to take pictures. He pumped his fists and watched as more police entered the Rotunda and took selfies with others. When officers told him to leave, he refused and moved towards the police line. He rushed the line and confronted officers, obstructing them from clearing rioters from the building. He grabbed one officer's wrist while the officer was clearing rioters. Later, he pushed back against police and at one point, he reached around a rioter to grab an officer's baton. | 6 days intermittent (Government requested 11 months) |
| *US v. Christopher Kuehne*, 1:21-cr-00160-TJK | 231(a)(3) | Kuehne was a member of the Kansas City Proud Boys and made plans with other members to go to Washington, DC. Prior to January 6, he sent a message to a Proud Boys group chat that members should "be prepared not only to beat down but when you do action of violence so utterly massive that we send a message." He came clad in a ballistic helmet and protective gloves. At the Capitol, he was a part of a group that flooded past barricades and entered the Capitol. Inside, he and a group moved a lectern to block police from closing a door and preventing more | 75 days (Government requested 6 months) |

11

| | | | |
|---|---|---|---|
| | | from coming in. Afterwards, he deleted materials from his phone that he sent to others and encouraged others to do the same. | |
| *US v. Jessica Reyher*, 1:23-cr-00138-RBW | 231(a)(3) | Reyher and her partner marched to the Capitol. After watching the chaos of that day, she and her partner entered the Tunnel and pushed to the front of the crowd and pushed against the line of police. They engaged in a series of coordinated pushes against the police line. After being pushed out, they returned to the Tunnel and pushed against the police line again. Once again, they left and returned again to push against the police line. | 90 days (Government requested 9 months) |
| *US v. Arthur Reyher*, 1:23-cr-00138-RBW | 231(a)(3) | Reyher and his partner marched to the Capitol. After watching the chaos of that day, he and his partner entered the Tunnel and pushed to the front of the crowd and pushed against the line of police. They engaged in a series of coordinated pushes against the police line. After being pushed out, they returned to the Tunnel and pushed against the police line again. Once again, they left and returned again to push against the police line. After that, Reyher exited the tunnel and returned again for a fourth time to push against the police line. | 8 months (Government requested 12 months) |
| *US v. Patrick Bournes*, 1:230cr000035-RC | 231(a)(3) | Bournes was a part of the mob that confronted | 4 months (Government |

12

| | | | |
|---|---|---|---|
| | | officers near the Tunnel. He entered the Tunnel and went towards the police line. He reached up and helped push a police shield away from the police line and towards the mob. Once at the police line, he aided in pushing his body against the police line. While others left, he remained and continued to push against the police line. Later, he moved behind a shield wall created by rioters and pushed against the line of rioters in front of him to push against the officers. | requested 11 months) |
| *US v. Brian Healion*, 1:23-cr-00230-TJK | 231(a)(3) | Healion, a member of the Philadelphia Proud Boys, was a member of the Ministry of Self Defense (MOSD). He knew Congress was meeting to certify the votes and texted in a group chat asking when Vice President Pence was going to be there. He met with around 100 other Proud Boys and yelled "Treason" at officers while passing by. He wore a neck gaiter while he, and other Proud Boys, led the crowd in change and in a surge toward the police line. He breached bike rack barriers and continued towards the Capitol. He reached out, grabbed a bike rack, and yanked it away from an MPD officer to interfere with officers' efforts to maintain a police line. Later, he entered the Capitol and entered a | 100 days (Government requested 6 months) |

| | | | |
|---|---|---|---|
| | | Senator's office to pose for pictures. | |
| *US v. Therese Borgerding*, 1:23-cr-00631-TJK | 231(a)(3), 1752(a)(1), 1752(a)(2) 5104(e)(2)(D) 5104(e)(2)(G) | Borgerding arrived on the East Front of the Capitol where she unhooked and pushed barriers apart, making way for herself and other rioters to run towards the Capitol. She then stood on the steps and waved a large "Q" sign. Inside, she pushed her way through the Rotunda doors and walked into the Rotunda. | 50 days (Government requested 13 months) |
| *US v. Tyler Ethridge*, 1:22-cr-00254-RC | 231(a)(3), 1752(a)(1), 1752(a)(2) 5104(e)(2)(D) 5104(e)(2)(G) | Ethridge, along with a crowd of other rioters, surged towards a police barricade of bike racks, destroying the barricades, overwhelming police, and knocking an officer to the ground. He also helped remove the bike rack fencing around the Capitol. He climbed media scaffolding and encouraged the crowd to continue fighting the police. Later, he entered the Capitol and entered the Rotunda. He recorded the inside of the Capitol and was heard encouraging another rioter to cover his face. He recorded and posted several videos of himself inside the Capitol on social medial. Minutes after, he joined a crowd of rioters and forcibly resisted officers. After, he returned to the Rotunda before leaving. | 7 months + 7 months home detention (Government requested 53 months) |

Finally, the Government's arguments in favor of an upward variance are misplaced and

inappropriate in this case. The Government attempts to weave together Mr. Rae's relationship with the "Proud Boys," the actions of others, sentencing events under 18 U.S.C. § 1512, and a generalized appeal to emotion to justify its request. A clear-eyed view of the facts here, however, do not support its request.

## Conclusion

For these reasons, Defendant respectfully requests a sentence including a period of probation combined with home confinement including electronic monitoring, other terms as recommended by probation, along with other conditions this Court sees appropriate.

Respectfully submitted,

Paul Rae
*By Counsel*

 /s/Sam Moore_____
Samuel C. Moore
Moore, Christoff & Siddiqui, PLLC
526 King St., Suite 506
Alexandria, VA 22314
Phone: (703) 535-7809
Fax: (571) 223-5234
scmoore@moorechristoff.com
*Counsel for Paul Rae*

## Exhibits

1. Letter from Mark King
2. Letter from Jenna Wasag
3. Letter from James P. Kelly

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of December 2024, I electronically filed the foregoing with the Clerk of Court Using the CM/ECF system, which will then send a notification of such filing (NEF) to:

AUSA Jason B.A. McCullough
601 D Street, NW
Washington, DC 20540
(202) 252-7233
jason.mccullough2@usdoj.gov

AUSA Monika (Isia) Jasiewicz
601 D Street, NW
Washington, DC 20540
(202) 714-6446
isia.jasiewicz@usdoj.gov

  /s/Sam Moore
Samuel C. Moore
Moore, Christoff & Siddiqui, PLLC
526 King St., Suite 506
Alexandria, VA 22314
Phone: 703-535-7809
Fax: 571-223-5234
scmoore@moorechristoff.com
*Counsel for Paul Rae*